**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JESSE D. ("LABRYSSA"),[1]<br><br>　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>　　　　Defendant. | Case No.  21-cv-04233-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REVERSING DENIAL OF BENEFITS; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>[Re:  ECF Nos. 23, 28] |

Plaintiff Jesse D. ("Labryssa")[2] appeals a final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security, denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  Labryssa asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, alternatively, to remand for further administrative proceedings.  The parties' cross-motions for summary judgment have been fully briefed, and the matter has been submitted without oral argument pursuant to Civil Local Rule 16-5.  *See* ECF Nos. 23 ("PMSJ"), 28 ("GMSJ"), 29 ("PReply").

For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART

---

[1] Plaintiff's unopposed motion for redaction, ECF No. 30, is GRANTED.  The Clerk is directed to replace Plaintiff's full name in the case caption with "Jesse D. ("Labryssa")."

[2] Given the redaction to Plaintiff's last name, the Court refers to Plaintiff as "Labryssa."  The Court intends no disrespect.

Labryssa's motion and DENIES the Commissioner's motion, REVERSES the denial of benefits, and REMANDS for further administrative proceedings.

## I. BACKGROUND

Labryssa was born on January 13, 1989 and was thus considered a "younger individual" under Social Security regulations at the time of her hearing. AR22[3]; 20 C.F.R. § 416.963. She has at least a high school education and has past relevant work as a sales attendant. AR22–23. Labryssa filed a protective application for SSI on December 6, 2018, claiming a disability onset date of October 23, 2018. AR15. She claims disability due to bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, cyclic vomiting, asthma, and gender dysphoria. AR17. Labryssa says that she began to experience gender dysphoria at age 14, and her family was not supportive. AR3825. As a result, she suffered from depression and consistently had difficulty holding jobs. *Id.* Her longest period of employment was three years, and she then stopped working "due to a breakdown in [her] mental health." AR41. Labryssa also says she suffered from sexual abuse as a child. AR350.

Labryssa's application was denied initially and upon reconsideration. AR15. A hearing before an administrative law judge ("ALJ") was held on May 12, 2020 (via phone due to the COVID-19 pandemic) at which Labryssa and a vocational expert ("VE") testified. *Id.*

The ALJ issued a written decision on September 18, 2020, finding that Labryssa was not disabled at any time through the date of decision, and denying benefits on that basis. AR12–24. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. AR1-6.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

---

[3] All citations to "AR" refer to the Administrative Record filed at ECF No. 18. The Court uses the page numbers in the bottom right corner.

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *See id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

**B.     Standard for Determining Disability**

A claimant seeking SSI under Title XVI must establish disability between the date of the application for benefits and the date of the ALJ's decision. *See Deckard v. Saul*, 2020 WL 1157026, at *2 (N.D. Cal. Mar. 10, 2020) (citing *Sophie Jean P. v. Comm'r of Soc. Sec.*, 2019 WL 6749415, at *2 (D. Or. Dec. 11, 2019)).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity;

3

(2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted).  The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations.  *Id.* at 1160 n.5.  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## III.    DISCUSSION

The Court first summarizes the ALJ's determinations at each step of the sequential analysis.  The Court then discusses Labryssa's challenges to the ALJ's determinations.

### A.    ALJ's Determinations

At step one, the ALJ determined that Labryssa had not engaged in substantial gainful activity since December 6, 2018, her application date.  AR17.

At step two, the ALJ found that Labryssa had the following severe impairments:  "bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, and gender dysphoria."  AR17.  The ALJ also found that Labryssa had additional non-severe impairments: "cyclical vomiting and asthma."  *Id.*  The ALJ found that Labryssa's cyclical vomiting "appear[ed] to have ceased by the time of her protected filing date."  AR17–18.  The ALJ noted that Labryssa underwent a mammoplasty, but that there were no indications of related complications.  AR18.

At step three, the ALJ concluded that Labryssa's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations.  AR18.  The ALJ found moderate limitations in "understanding, remembering[,] or applying information;" "interacting with others;" and "concentrating, persisting[,] or maintaining pace."  AR18–19.  The ALJ found a mild limitation in "adapting or managing oneself."  AR19.  Because the impairments did not cause at least two "marked" limitations or one "extreme" limitation, and because there was no indication

4

that Labryssa required a "highly structured living arrangement to function," these impairments did not meet or medically equal the severity of the listed impairments. AR19–20.

Prior to making a step four determination, the ALJ found that Labryssa had the RFC to perform a full range of work at all exertional levels but with "the following nonexertional limitations: "simple, routine tasks, in low stress environment[s] (meaning only occasional interaction with coworkers, supervisors and public; little independent judgment or decision making; no fast pace like assembly line; and no high production quotas, such as in piecemeal work)." AR20. In making this determination, the ALJ found that Labryssa's impairments could "reasonably be expected to cause some of the alleged symptoms," but that Labryssa's statements about the intensity, persistence, and limiting effects of the symptoms "[we]re not entirely consistent with the medical evidence and other evidence in the record." AR20–21. The ALJ was "not persuaded" by the opinion of a psychological consultative examiner, Dr. Laura Jean Catlin, who had found marked levels of limitation in multiple areas, such as maintaining attendance, working in coordination with others, and ability to complete a normal workday without interruption. AR21–22.

Based on that RFC and the testimony of a VE, at step four the ALJ found that Labryssa was unable to perform any past relevant work. AR22. The VE had testified that a hypothetical claimant with an RFC identical to Labryssa would not be able to perform Labryssa's past work. *Id.*

At step five, the ALJ considered Labryssa's RFC, age, education, and work experience in connection with the Medical-Vocational Guidelines ("Guidelines" or "Grids"). AR 23. "The Medical-Vocational Guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Ford v. Saul*, 950 F.3d 1141, 1149 n.4 (9th Cir. 2020) (internal quotation marks and citation omitted). "The Guidelines consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* (internal quotation marks and citation omitted). The ALJ found that Labryssa's

5

ability to "perform work at all exertional levels ha[d] been compromised by non-exertional limitations," but that based on testimony from the VE, Labryssa would be able to perform the requirements of occupations such as hand packager, routing clerk, or housekeeper. AR23. Accordingly, the ALJ found that Labryssa was not disabled. *Id.* at 23–24.

### B. Labryssa's Challenges to the ALJ's Determinations

Labryssa claims that the ALJ erred in four ways. First, Labryssa contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting Labryssa's testimony. PMSJ at 7–14. Second, Labryssa asserts that the ALJ erred in evaluating the medical evidence, particularly in finding the opinion of psychological consultative examiner Dr. Catlin not persuasive. *Id.* at 14–21. Third, Labryssa contends that the ALJ erred in determining that her cyclical vomiting and asthma were not severe impairments at step two of the analysis. *Id.* at 21–22. Fourth and finally, Labryssa argues that the ALJ erred in assessing Labryssa's RFC and determining that she is able to work. *Id.* at 22–24. For those reasons, Labryssa asserts that the Court should grant her motion for summary judgment and remand for payment of benefits or, in the alternative, further proceedings. *Id.* at 24–25. The Commissioner asserts that the ALJ properly evaluated the record evidence and that substantial evidence supports the ALJ's determinations at each step of the sequential analysis. *See generally* GMSJ.

The Court addresses each of these arguments in turn.

### i. Rejection of Labryssa's Testimony

Labryssa's first argument is that the ALJ failed to provide clear and convincing reasons for rejecting her testimony about her symptoms. PMSJ at 7–14. The Commissioner responds that the ALJ did not in fact reject or discount all of Labryssa's statements, and that where the ALJ did, the record supported discounting Labryssa's testimony. GMSJ at 3–11.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). The ALJ held that Labryssa's medically

6

1    determinable impairments could reasonably be expected to cause some of the alleged symptoms,
2    AR20, and the Commissioner does not contest this statement.

3      "If the claimant satisfies the first step of this analysis, and there is no evidence of
4    malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only
5    by offering specific, clear and convincing reasons for doing so." *Id.* (citation omitted).  Neither
6    the ALJ nor the Commissioner point to any evidence of malingering.

7      The ALJ instead found that Labryssa's statements "concerning the intensity, persistence[,]
8    and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and
9    other evidence in the record."  AR20–21.  The ALJ found that while the evidence was consistent
10   with some "mental-related symptomology," the "more targeted mental status examinations . . . are
11   reflective of generally intact functioning overall."  AR21.  The ALJ noted that medication and
12   treatment appeared to be effective and that there was no indication that more invasive forms of
13   treatment (such as psychiatric hospitalization) were necessary.  *Id.*  The ALJ further noted that the
14   psychological consultative examination indicated depression, "but normal levels of arousal,
15   average response time, the appearance of alertness, the ability to sustain attention, no suicidal
16   ideation, no delusions or hallucinations, no thought content or process deficits, and normal insight
17   and judgment."  *Id.*  These observations were "suggestive of some limitation" but not the extent
18   claimed by Labryssa in her testimony.  *Id.*

19     The Court finds that the ALJ provided clear and convincing reasons for discounting some
20   of Labryssa's testimony about the severity of her impairments.  It is important to note that the ALJ
21   did not discount all of Labryssa's testimony, but instead only partially discounted her testimony
22   regarding the severity of her symptoms.  While an ALJ may not discount a claimant's subjective
23   complaints based solely on a lack of objective medical evidence to fully corroborate the alleged
24   severity of pain, the ALJ "may find the claimant's allegations of severity to be not credible" based
25   on specific findings and other evidence that is in the record.  *See Bunnell v. Sullivan*, 947 F.2d
26   341, 345 (9th Cir. 1991) (en banc); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir.
27   2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain
28   testimony, it is a factor the ALJ can consider in his credibility analysis."); *contra* PMSJ at 8.  The

ALJ made specific findings based on medical evidence and other evidence in the record. For example, although Labryssa testified that her depression and anxiety were completely disabling, the ALJ noted that the mental health examinations were "reflective of generally intact functioning overall." AR21. The ALJ cited to records finding that she had a "goal-directed thought process," "good insight and judgment," and that she was "well-groomed, calm, [and] cooperative." AR335. Although Labryssa testified that she had difficulty getting out of bed, records indicated that her "sleep and energy" were "good." *E.g.*, AR3839. Although Labryssa claimed to miss appointments, medical records indicated that she was "adhering to [her] study visits." AR3046. The inconsistencies between Labryssa's testimony and the medical evidence—rather than a total lack of evidence supporting her claims—is one factor the ALJ can consider. *Burch*, 400 F.3d at 680–81.

The ALJ also provided other clear and convincing reasons for discounting some of Labryssa's testimony about the severity of the impairments based on the effectiveness of her treatment. *Morgan v. Comm'r*, 169 F.3d 599–600 (9th Cir. 1999) (records showing improvement on medication discounted claimant's testimony regarding severity of impairments). The ALJ pointed to evidence in the record signaling "medication and treatment effectiveness" and the lack of need for more invasive forms of treatment. *See Burch*, 400 F.3d at 681 ("lack of treatment" one factor in assessing severity of symptoms). The treatment evidence indicated that after Labryssa switched from Lexapro to Wellbutrin and increased the Wellbutrin dose, she had "improved emergency, motivation[,] and executive functioning." AR331 (indicating that Labryssa was "[g]etting more things done," "[did] not feel as muted as before," and "can get excited about things"). Labryssa herself testified that her depression, while still an obstacle, had become "more controlled." AR48. The evidence cited by the ALJ provides clear and convincing reasons for discounting some of Labryssa's testimony.

Labryssa cites evidence in the record that she says undermines the ALJ's conclusion regarding her testimony. *See, e.g.*, PMSJ at 11–12. While the record supports Labryssa's contention that she has "mental health symptoms" indicating some level of inhibition, *see id.* at 12–13, the record is consistent with the ALJ's finding that Labryssa faces "some limitations" but

8

not to the extent that she claims in her testimony and does not undermine the clear and convincing reasons the ALJ provided for discounting *some* of Labryssa's testimony regarding severity of her symptoms.

The ALJ's discounting of some of Labryssa's testimony about the severity of her symptoms is thus not a basis for reversal or remand.

### ii. Evaluation of Medical Evidence and Dr. Catlin's Opinion

Second, Labryssa argues that the ALJ erred in finding the opinion of psychological consultative examiner Dr. Catlin "not persuasive." PMSJ at 14–21. Both Labryssa and the Commissioner recognize that regulations governing the Commissioner's evaluation of medical evidence recently changed. *See* PMSJ at 15–17; GMSJ at 11–18. The parties, however, dispute the import of the new regulations, with Labryssa arguing that the Court is still bound by Ninth Circuit precedent establishing a hierarchy of medical opinions and the Government arguing that the new regulations undermine that precedent. The Court first confronts that issue before considering Plaintiff's argument that substantial evidence does not support the ALJ's treatment of Dr. Catlin's opinion as an examining doctor.

#### a. Legal Framework

As both parties recognize, the regulations governing the evaluation of medical evidence have recently changed. Under Ninth Circuit interpretation of previous regulations that applied to claims filed before March 27, 2017, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Under that standard, an ALJ was required to provide "clear and convincing" reasons to reject a treating physician's uncontradicted opinion and "specific and legitimate" reasons to reject a treating physician's contradicted opinion." *Id.*

The regulations regarding evaluation of medical evidence, however, have recently been amended and several of the prior Social Security Rulings on which those standards relied have been rescinded as to claims filed after March 27, 2017. *See* Revisions to Rules Regarding the

9

Evaluation of Medical Evidence, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations state that the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." The Commissioner instead "evaluates [the] persuasiveness" of all medical opinions based on supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 416.920c(a)–(c). The two "most important factors" are consistency and supportability, which are the "same factors" that "form the foundation of the current treating source rule." 82 Fed. Reg. at 5853.

Labryssa argues that Ninth Circuit authority assigning different weight to different types of physicians still governs this case, notwithstanding the regulations. PMSJ at 15. Labryssa also contends that the standards governing rejection of treating physician's testimony—"clear and convincing reasons" for uncontradicted testimony and "specific and legitimate" reasons for contradicted testimony—still apply. *Id.* at 15–16. The Commissioner disagrees and says that the new regulations undermine the Ninth Circuit's hierarchy-based case law. *See* GMSJ at 11–18.

The Court joins others in this district and finds that the new regulations undermine the Ninth Circuit's case law regarding hierarchy-based preferences for certain types of medical opinions. *See Madison L. v. Kijakazi*, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021) ("[T]he Ninth Circuit has recognized that the Social Security Administration may, by regulation, override the court's own prior interpretations of the [Social Security] Act."); *accord V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *13–14 (N.D. Cal. Mar. 30, 2020) (applying the new regulations). The Commissioner, therefore, was not required to automatically accord greater weight to Dr. Catlin's opinion because she was a treating physician; instead, the "relationship with the claimant" was one factor among others that the Commissioner could consider. *See V.W.*, 2020 WL 1505716, at *13–14 (specifying factors to be considered in evaluating the "relationship with the claimant," including the "[e]xamining relationship") (citing 20 C.F.R. § 4040.1520c(c)(3)(i)–(v)).

The Court, however, also joins these courts in finding that under these new regulations, notwithstanding the elimination of the hierarchy principles, "the ALJ must still 'articulate how [she] considered the medical opinions' and 'how persuasive [she] find[s] all of the medical

10

opinions." *V.W.*, 2020 WL 1505716, at *14 (quoting *Christopher Charles A. v. Comm'r of Soc. Sec.*, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020)) (cleaned up). Under this standard, the ALJ is "required to specifically address the two most important factors, supportability and consistency," and may address the other factors. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)). Thus, the ALJ may not rely on general boilerplate statements in finding more or less persuasive a medical opinion. *Id.* The Court also finds that while the regulatory framework for how the Commissioner evaluates medical opinions may have changed, "[i]t remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate' reasons in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (citing *Patricia F. v. Saul*, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2022)); *accord* PReply at 5–6.

       *b. Dr. Catlin*

The Court now applies these standards to the ALJ's finding that Dr. Catlin's opinion was not persuasive. AR22. The Court finds that the ALJ erred in discounting Dr. Catlin's opinion because the ALJ did not adhere to the requirements for weighing medical opinions set forth above.

Dr. Catlin performed an evaluation of Labryssa on May 4, 2020 via telephone due to COVID-19. AR3824–31 (Dr. Catlin's report). Dr. Catlin interviewed Labryssa and recognized that she was represented by counsel. AR3824. Dr. Catlin found that Labryssa had "difficulty performing her activities of daily living," "difficulty dealing with people she does not know," difficulty "concentrating and remembering to do important things without reminders," and relegated herself to "spend[ing] a lot of time alone in her house." AR3824–25. Dr. Catlin recognized Labryssa's personal history, including her development of symptoms of gender dysphoria at age 14 and her transition from living as male to living as female without the support of her family. AR3825. In addition to interviewing Labryssa, Dr. Catlin performed a mental status examination, Montreal Cognitive Assessment (MoCA), and Beck Depression Inventory (BDI). AR3824. Labryssa's MoCA score was a 16 out of 22, indicating mild cognitive

11

impairment in the domains of immediate and delayed recall. AR3826–27. Labryssa scored a 26 on the BDI, indicating "symptoms of moderate depression." AR3827. Dr. Catlin reported that Labryssa "ha[d] difficulty making decisions, [wa]s no longer interested in things, and d[id] not have enough energy to do the things she knows she should do." *Id.*

Based on the interview, the MoCA, the BDI, and "reported symptoms and history," Dr. Catlin concluded that Labryssa's health symptoms would "make maintaining employment very difficult." AR3828. Labryssa's symptoms "prime her to be more irritable, emotionally sensitive, and unable to navigate most social interaction in an appropriate manner," which would "cause difficulties with keeping up appropriate pace of the workplace." AR3828-29. Labryssa's "severe impairments" would make it difficult for her to organize herself and arrive on time and consistently show up for employment. AR3829. Based on her assessment, Dr. Catlin concluded that Labryssa had a "marked impairment" performing in the workplace. *Id.* Dr. Catlin broke down this overall assessment into 23 different categories, in which Dr. Catlin assessed "no impairment," "mild impairment," and "marked impairment" for each category. AR3829–30.

The ALJ was "not persuaded" by Dr. Catlin's opinion, and in particular on her assessment of marked impairment in several of the 23 categories. AR22. The ALJ recognized that Dr. Catlin "perform[ed] an examination" of Labryssa, but stated that "the findings [in her report] were not reflective of such level of limitation." *Id.* The ALJ concluded that Dr. Catlin "did not really provide much in the way of explanation as to why this level of limitation was appropriate." *Id.* The ALJ found that "the opinion is not consistent with the longitudinal record" and cited without analysis the same exhibits as in her analysis of Labryssa's testimony. AR22. The ALJ concluded by again noting the lack of "more invasive forms of psychiatric treatment." *Id.*

The Court finds that the ALJ failed to adhere to the requirements for evaluating medical opinions. The Court need not determine if the new regulations undermine the Ninth Circuit's "clear and convincing" or "specific and legitimate" standards because the ALJ failed to meet either standard. In fact, the ALJ failed to engage with Dr. Catlin's assessment in any meaningful sense and made only a passing assessment of the "supportability" and "consistency" factors that the Commissioner deems most important. 82 Fed. Reg. at 5853. The ALJ's apparent analysis of

the "supportability" factor is limited to the statement "the doctor did not really provide much in the way of explanation as to why [the marked] level of limitation was appropriate." AR22. This fails to provide any substantive reason for rejecting Dr. Catlin's analysis, which spanned multiple pages and broke down her ultimate conclusions on impairment into 23 different categories. *See* AR3829–30. While the ALJ was not required to analyze each and every category of impairment, the ALJ's single-sentence statement fails to substantively engage with Dr. Catlin's assessment.

The same conclusion applies to the ALJ's apparent analysis of "consistency," which solely refers back to the same records the ALJ analyzed in the context of Labryssa's testimony. AR22. While the Court has found that the ALJ provided sufficient reasons for discounting some of Labryssa's testimony, Dr. Catlin's opinion was based on both Labryssa's statements *and* Dr. Catlin's own examination, including a mental status examination, the MoCA, and the BDI. AR3824, 3826–28; *contra* GMSJ at 19–20 (arguing that the opinion may be discounted where it is based "to a large extent" on a claimant's self-reports). Clinical interviews and mental status evaluations are "objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The ALJ's analysis and partial discounting of Labryssa's own testimony does not fully apply to Dr. Catlin's report, so the ALJ was required to further justify discounting the opinion based on the consistency factor.

The ALJ thus failed to properly engage with Dr. Catlin's findings and apply the standard articulated in the new regulations.

### iii. Severe Impairments

Labryssa next argues that the ALJ erred in finding that cyclical vomiting and asthma were not severe impairments at step two of the framework. PMSJ at 21–22. Labryssa cites documents in the record that she claims show that she has repeatedly experienced these issues, including in instances in which the cause was unclear, and that step two should only be used to dispose of "groundless claims". *Id.* The Commissioner argues that substantial evidence supports the ALJ's findings that neither the cyclical vomiting nor asthma were severe impairments. GMSJ at 22–23.

The Court finds that Labryssa misidentifies the purpose of step two. "Step two is merely a threshold determination meant to screen out weak claims." *Deckard*, 2020 WL 1157026, at *4

13

(quoting *Buck*, 869 F.3d at 1048). Because the ALJ decided step two in Labryssa's favor, and the ALJ went on to consider steps three through five, Labryssa was not prejudiced by any error in the ALJ's determination as to which of her impairments were severe. *See Buck*, 869 F.3d at 1049 (where step two was decided in the claimant's favor, "[sh]e could not possibly have been prejudiced" and "[a]ny alleged error [was] therefore harmless").

The true import of Labryssa's argument is that her cyclical vomiting and asthma should have been considered by the ALJ when determining her RFC. *Cf.* PMSJ at 22 ("The ALJ did not incorporate or discuss issues from [Labryssa's] cyclical vomiting and asthma in determining [her] RFC."). The Court will consider this argument in the context of the RFC. *See Buck*, 869 F.3d at 1048–49 (step two "not meant to identify the impairments that should be taken into account when determining the RFC;" in determining the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

### iv.  RFC

Labryssa's final argument is that the ALJ erred in assessing her RFC. PMSJ at 22–24. Labryssa points to her arguments that the ALJ improperly discounted her testimony; failed to properly consider Dr. Catlin's opinion; and failed to consider her cyclical vomiting and asthma in the context of the RFC. *See id.* The Commissioner responds that substantial evidence supports the ALJ's RFC determination. *See* GMSJ at 23–24.

Labryssa's arguments are well-taken. The Court has already concluded that the ALJ failed to properly consider Dr. Catlin's testimony. *See supra* Section III.B.ii. The Court also agrees with Labryssa that the ALJ failed to consider her cyclical vomiting and asthma in the RFC determination. Contrary to the Commissioner's argument otherwise, there was documentation in the record regarding these conditions beyond Labryssa's own complaints, as the ALJ herself recognized in determining that the impairments were not severe. *See* GMSJ at 24; AR17–18. The ALJ should have taken these conditions into account when conducting the RFC analysis, notwithstanding her conclusion that they were not severe impairments. *See Buck*, 869 F.3d at 1048–49.

Given these conclusions, the Court must necessarily find that the ALJ's step five disability

1  determination was not supported by substantial evidence in the record.

2            \*   \*   \*

3    The only remaining question is whether the Court should remand for further proceedings or for payment of benefits to Labryssa.  *Compare* PMSJ at 24–25 (urging remand for payment of benefits), *with* GMSJ at 24–25 (urging remand for further proceedings, if the Court does not affirm).  A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met:  (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Brown-Hunter*, 806 F.3d at 495 (internal quotation marks and citation omitted).  Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy."  *Id.* (internal quotation marks and citation omitted).

  The Court finds that remand for further proceedings is appropriate.  The first factor is met here, as the ALJ did not provide legally sufficient reasons for discrediting Dr. Catlin's opinion or for failing to consider Labryssa's cyclical vomiting or asthma at step five.  The second factor is not met, however, because further proceedings are necessary so that all of the medical evidence that is entitled to credit, and all of Labryssa's impairments, may be considered in formulating an appropriate RFC.  It is unclear whether the third factor is met, because it is unclear on this record what an appropriate RFC would look like and whether there are jobs in the economy for an individual with such an RFC.  The Court will thus remand for further proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Labryssa's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and the Commissioner's motion for summary judgment is DENIED.  The denial of benefits is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

Dated:  June 6, 2022

BETH LABSON FREEMAN
United States District Judge

16